**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No: 1:18-cv-20320

KAREEM AMID SWILLEY,           Hon. Thomas L. Ludington

        Defendant.
_____/

## ORDER DENYING MOTION TO SUPPRESS

On May 9, 2018, an indictment was returned charging Defendant Kareem Amid Swilley with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count I), possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count II), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count III), felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count IV), and felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) (Count V). ECF No. 1. Defendant was detained pending trial. *See* ECF No. 11.

On August 15, 2018, Defendant filed a motion to suppress evidence seized during a warrantless probation search at his residence. ECF No. 14. The government responded on September 20, 2018. ECF No. 16. The initial briefing on the motion to suppress was limited in scope. Both parties expressed a desire to develop their briefing following an evidentiary hearing. The evidentiary hearing was held on September 24, 2018. ECF No. 17. Defendant filed his supplemental brief in support of the motion to suppress on November 30, 2018. ECF No. 18. The

government filed a supplemental response in opposition to the motion on December 21, 2018. ECF No. 19.

**I.**

In April of 2018, Defendant was on probation for driving while intoxicated (DWI) pursuant to an order of the Saginaw County Circuit Court. Hr'g. Tr. at 5, ECF No. 17. The probation order set forth the following conditions:

> 8) You must not use or possess any controlled substances or drug paraphernalia, unless prescribed for you by a licensed physician, or be with anyone you know to possess these items
>
> . . .
>
> 13) You must allow the field agent into your residence at any time for *probation supervision.*
>
> 14) You must submit to a search of your person and property, including but not limited to your vehicle, residence, and computer, without need of a warrant *if the field agent has reasonable cause to believe you have items which violate the conditions of your probation.*

Mot. Ex. B (Special Conditions), ECF No. 14-3 (emphasis added).

On April 25, 2018, Officer Jonathan Brown, a probation officer with the Michigan Department of Corrections, conducted a probation compliance check at Defendant's residence in Saginaw, MI. Mot. Ex. A (Case Report), ECF No. 14-2. MDOC refers to these as "Nighthawk" checks. Officer Brown explained that these checks are routine, and on that evening Kareem's house was one of 15-20 homes that Officer Brown's team was assigned to check. Tr. at 11. Officer Brown was assisted by Saginaw Police Department Officers Harris, Baxter, Graves, and Michigan State Police Trooper McGukin. *Id.*

Officers Brown and Harris approached the front door and knocked. *Id.* Defendant's mother, Lovette Swilley (the home owner), answered the door. *Id.* Officer Brown informed her

that he was there to complete a probation compliance check. *Id.* Ms. Swilley called for Kareem and "invited" the officers in. *Id.* As Officer Brown entered the residence he detected a "strong odor of incents [*sic*]" as well as a "slight odor of marijuana." *Id.* Officer Brown introduced himself to Kareem and explained that he was performing a probation compliance check. *Id.* "Kareem was searched for officer safety by SPD and large sum of money was located on his person with a rubber band around it." *Id.* Kareem was asked if there was anything illegal in the house that would violate the terms of his probation and he replied "no." *Id.*

Officer Brown then "stated to Kareem" that he would be completing a search of his room in accordance with his probation conditions and asked where his room was. *Id.* Kareem showed Officer Brown to his room and unlocked the door. *Id.* Officer Brown searched the room and located a loaded handgun on the bed under the pillow. *Id.* Kareem was then detained for violating his probation conditions. Officer Brown continued the search and located additional items in the grandfather clock: a blue surgical glove containing what appeared to be heroin[1] and a 9mm magazine loaded with 15 rounds. *Id.* "Due to locat[ing] numerous illegal items in Kareem's bedroom the search was stopped." *Id.* Officer Brown obtained consent from Ms. Swilley to search the remainder of the house. *Id.*

Officer Brown testified that, while he was searching the bedroom, Trooper McGukin found marijuana in a stainless-steel tumbler on a shelf in the hallway and Officer Graves found marijuana in mason jars on the first floor. Tr. at 24-25. Although this information was not furnished in his report, Officer Brown also testified that he found marijuana in a bag in a clothes basket in Kareem's room. Tr. at 28.

---

[1] The substance turned out to be fentanyl. Tr. at 27.

- 3 -

Officer Brown testified that the basis for his search was that he "smelt the incense masking the odor of marijuana, which gave [him] reasonable cause - - the reason to believe that Mr. Swilley had something in the residence that would violate his terms of probation." Tr. at 30. He also felt as though Kareem had consented to the search based on his actions and words. *Id.*

## II.

The parties dispute whether the search was supported by consent, and whether it was supported by reasonable cause.

### A.

"Consent must be proved by clear and positive testimony and must be unequivocally, specifically, and intelligently given . . ." *U.S. v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992). "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). "The standard for measuring the scope of a suspect's consent ... is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Courts are to consider the totality of the circumstances, including the age and intelligence of the individual as well as the individual's knowledge of the right to refuse consent. *United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir.1996). Although the individual's knowledge of his right to refuse is a relevant consideration, an officer need not inform the individual of his right to refuse consent. *United States v. Collins*, 683 F.3d 697, 702 (6th Cir.2012)

### B.

A two-pronged approach applies to determine the validity of a probation search. *United States v. Loney*, 331 F.3d 516, 520 (6th Cir.2003). First, the court is to consider "whether the relevant regulation or statute pursuant to which the search was conducted satisfied the Fourth

Amendment's reasonableness requirement." *Id.* If so, the court then considers "whether the facts of the search itself satisfy the regulation or statute at issue." *Id.*

A statute satisfies Fourth Amendment scrutiny where it permits searches based on reasonable suspicion that an individual is violating the terms of his probation. *Id.* Neither party disputes this proposition. Rather, they dispute whether the reasonable cause standard was met in this case.[2] The reasonable suspicion standard is less stringent than the probable cause requirement. *Loney*, 331 F.3d at 521. The reasonable suspicion standard is met where it is supported by "articulable reasons and a particularized and objective basis for suspecting the particular person … of criminal activity." *United States v. Henry*, 429 F.3d 609-10 (6th Cir. 2005). The Government has the burden to show reasonable suspicion. *Id.*

### III.

### A.

With respect to his entry into the home, Officer Brown's report indicates that Ms. Swilley "invited" him in. Rep., ECF No. 14-2. However, he testified that she did not say "come in," nor did she make any non-verbal gesture inviting him in. Tr. at 33:4-11, 39:23. Rather, she simply opened the door and he followed her in. Tr. at 33:4-11. He assumed she was inviting him in because she did not object to his entry. *Id.* It is axiomatic that the absence of an objection is not a substitute for affirmative consent. *See U.S. v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992) (explaining that consent "must be unequivocally, specifically, and intelligently given . . . .). Nevertheless, Officer Brown's entry into the home was valid without consent, pursuant to paragraph 13 of Kareem's probation conditions: "You must allow the field agent into your

---

[2] Neither party has argued that there is any meaningful distinction between reasonable "cause" as used in the probation conditions in this case, and reasonable "suspicion" as used in the case law discussed above.

residence at any time for *probation supervision.*" Mot. Ex. B (Special Conditions), ECF No. 14-3 (emphasis added).

With respect to the search, Officer Brown did not have consent. Officer Brown's report states as follows: "I stated to Kareem *that I would be completing a search of his room* per his probation conditions and asked where his room was." Rep., ECF No. 14-2 (emphasis added). All of Kareem's subsequent actions must be evaluated in light of Officer Brown's initial statement. Officer Brown *told* Kareem he was going to search the room. He did not ask for permission to do so. Kareem showed him to the room and unlocked the door. By doing so, he facilitated a search that Officer Brown told him was already underway. Kareem's acquiescence to a show of authority did not constitute consent. *See United States v. Worley*, 193 F.3d 380, 385-86 (6th Cir. 1999). The lone case offered by the government to support its position is distinguishable. As the government acknowledges, the officers in *Thurman* "*requested* consent to search." Supp. Resp. at 13, ECF No. 19 (citing *United States v. Thurman*, 525 F. Appx. 401 (6th Cir. 2013) (emphasis added). This is not what occurred here.

**B.**

Officer Brown had reasonable cause to believe that Kareem was in possession of marijuana, in violation of his probation conditions. It is worth noting at the outset that neither party appears to dispute the proposition that, if Officer Brown did indeed smell marijuana, he had reasonable cause to support the search. Neither party cites any precedent calling that proposition into question.[3] The discussion in the parties' briefing contains little to no parsing of

---

[3] Plaintiff cites case law for the proposition that the smell of a burnt controlled substance supports a finding of probable cause. Supp. Resp. at 8 (citing *United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001). Reasonable suspicion is a lower threshold than probable cause. *Loney*, 331 F.3d at 521. Thus, *a fortiori* the smell of burnt marijuana supports reasonable suspicion. Defendant cites no case law to the contrary.

case law applying the reasonable suspicion standard. Rather, the discussion is largely focused on the consistency and credibility (or lack thereof) of Officer Brown's testimony that he smelled marijuana. The Court finds Officer Brown's testimony to be credible and consistent.

Officer Brown testified that, based on his training and experience: 1) he can identify the smell of marijuana, 2) he has come across it on a number of occasions, and 3) the smell of marijuana is one of the things he looks for when conducting probation checks. Tr. at 13. Officer Brown's report states that he detected a "slight" odor of marijuana upon entering the residence. Rep., ECF No. 14-3. He reiterated that statement at numerous points in his testimony. *See, e.g.*, Tr. at 21, 36, 40, 56. His testimony is buttressed by the fact that over 200 grams of marijuana was found at various locations in the house.

Defendant appears to take issue with the fact that, between the body camera videos, the written report, and the hearing transcript, the marijuana odor is variously referred to as "slight," "faint," or "small." These words all have an equivalent connotation. The fact that Officer Brown used different words to describe the odor is not material. Defendant also emphasizes that his probation officer, Ms. Corley, had been to the house two days before the search and had not reported any unusual smell. Tr. at 42. This does not undermine Officer Brown's testimony that he smelled Marijuana two days later.

Defendant also underscores the fact that Officer Brown did not mention any marijuana odor when he entered the residence. In contrast, upon opening a plastic bag of marijuana in the upstairs bedroom, Officer Brown can be heard on the body cam video exclaiming "Whew!" Tr. at 44-45. Officer Brown explained that his exclamation was in response to the strong odor of marijuana emanating from the bag. The fact that Officer Brown exclaimed "Whew!" when he came in contact with the bag of marijuana upstairs, but made no comment upon entering the

home downstairs, does not undermine his testimony that he smelled a slight odor of marijuana upon entering the home. Indeed, he explained that the former odor was strong (causing him to exclaim "Whew!"), whereas the latter was faint (causing no exclamation).

Defendant also contends that Officer Brown "appeared to be planning to do a search from the outset." Defendant quotes the following testimony:

Q. Now, *when you walked in the house*, were you planning to execute a search?

A. Was I planning to?

Q. *At the moment you walked into the house*, was it your desire to do a search of his residence?

A. Yes.

Tr. at 35 (emphasis added). Defendant's suggestion is that, prior to arriving at the residence, Officer Brown intended to search the house. That, however, does not square with the testimony. The testimony is that *at the moment he walked into the house*, his intention was to search it. This does not corroborate any ill intent. Indeed, he testified that he smelled marijuana upon walking into the house.

Defendant also contends that Officer Brown did not understand the distinction between paragraph 13 of the probation conditions (authorizing home entry for *probation supervision only*) and paragraph 14 (authorizing a search *if supported by reasonable cause*). The body cam audio reveals Officer Brown stating to Defendant that the judge had "ordered home checks, anytime" which he further explained as follows: "So it's a search, personal property, anytime, just random." Harris Video, 6:30 to 6:37; Tr. at 50-52. Indeed, Officer Brown did not correctly explain the probation conditions to Defendant. However, Defendant draws two unjustified conclusions from this fact.

First, Defendant concludes that Officer Brown did not understand the probation conditions himself and felt as though he was entitled to search the home without cause. This does not follow. Officer Brown is under no obligation to fully explain the relevant distinction to the subject of the search. The correct explanation was that the state Judge's order entitled Officer Brown to do random home checks at any time *as well as searches of person and property*, but only if those searches are supported by reasonable cause, which Officer Brown had based on the marijuana odor. The fact the Officer Brown's explanation in the heat of the moment was imprecise and incomplete does not establish that he did not know the relevant legal standard.

Based on Officer Brown's imprecise explanation of the probation search standard, Defendant also concludes that Officer Brown did not have reasonable cause to search. Even if Officer Brown did not understand the standard that applies to probation searches, that fact is entirely consistent with his contention that he smelled marijuana. In other words, if he had reasonable cause to search, but incorrectly believed he could search even without cause, this does not mean he never had reasonable cause in the first instance. At issue here is the Officer's conduct and objective basis for that conduct, not the accuracy of the Officer's subjective understanding of the law. Defendant contends that Officer Brown's misstatement of law suggests that his story about marijuana odor was invented post-hac to justify the search. This is certainly not implausible. However, there is no other reason to believe that this is so. His imprecise articulation of the standard to the Defendant does not, by itself, undermine his credibility.

Finally, Defendant contends that the marijuana that was found in the home could not have produced the odor Officer Brown detected at the front door. The only marijuana on the first floor was wrapped in plastic bags in a sealed mason jar which was inside a nylon bag in the corner of a different room (the dining room). Tr. at 55-58; Graves Video at 15:15 to 16:00.

Additional marijuana was found in a closed plastic bag in a wooden chest upstairs. The marijuana found upstairs produced a strong smell, but Officer Brown admitted it would not have produced the faint odor he detected upon entering the home. Tr. at 44-45.

In short, Officer Brown's inability to pinpoint the precise source of the smell emanating to the front door does not undermine his testimony. Rather, his testimony is buttressed by the fact that over 200 grams of marijuana was found in different areas of the home packaged in different fashions. Moreover, he testified that he smelled burnt marijuana, as opposed to stored marijuana. Tr. at 58. Given that different quantities of marijuana were found throughout the house in different locations and packaged in different fashions, it is quite reasonable that some of the marijuana was not merely intended for resale but had recently been smoked. This is further bolstered by the strong smell of incense, which is often used to mask the smell of marijuana smoke.

Officer Brown's testimony that he smelled marijuana upon entering the home is sufficient to establish reasonable cause to believe that Defendant was in possession of items that violated his probation conditions. Therefore, the search was permissible.

**IV.**

At the conclusion of the evidentiary hearing, the Court questioned why the search continued after the gun was found and Kareem was initially detained. Tr. at 59. That issue was to be discussed in the supplemental briefing. *See Id.* Defendant did not address it in his supplemental brief. The Court will not develop the argument.

Accordingly, it is **ORDERED** that the motion to suppress, ECF No. 14, is **DENIED.**

                                                        s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

Dated: January 4, 2019